We will hear an argument now in the case of United States v. Leal. Do we have both lawyers? Stephen Williams is here, Judge, for the defendant's appellate. Mr. Reed, all right. Mr. Reed, please proceed. Peter Reed Judge, if it pleases the court, Peter Reed for the government. Just as in Patterson, the Howe's factors show that Leal's interview was characterized by consent, not by coercive pressures indicative of custody. The district court made multiple legal errors in its attempt to explain away the objective voluntariness of Leal's words and actions by instead focusing on Leal's subjective knowledge of guilt. Officers told Leal at the outset that he was not under arrest. Leal then repeatedly gave consent no less than five times to go to the house, to hand over his phone, to hand over keys, to a pat-down search before getting in the vehicle and to the interview itself.  So, as in Patterson, there's involuntariness at every turn under the Howe's factors. Counsel, we're not dealing with whether the confession was voluntary, but whether Leal was in custody for purposes of Miranda. So get voluntariness out of the picture. My question about custody is whether a reasonable person would have thought he was free to leave when the agents had his wallet and car keys. Certainly, Judge. I do think that under Patterson, voluntariness plays a role under all of these. Forget Patterson. Forget voluntariness. Please address my question. Sure, Judge. I think your question goes to the restraint factor, which is the fourth Howe's factor. Forget factors. Right? Lawyers fill their heads with factors, and it gets in the way of thinking. I asked a concrete question. Would a reasonable person have felt free to leave when the agents had his wallet and car keys? And I would appreciate it if you would deal with that question rather than something else. Yes, Your Honor. I think a reasonable person would feel free to leave when the agents had the wallet and car keys under the facts in this case. The facts show that the wallet was on the table in the interview room in front of Mr. Leal, and that the car keys were taken from him by consent in order to move his vehicle off the roadway. He knew why the officers had the keys, and he could have asked for the keys back, and the vehicle was near the location where the interview was held, within two or three blocks according to the evidence put on at the suppression hearing. And when we move backwards and look at the location more broadly as a whole, we see that Leal consented to go to the residence. As in Patterson and Ruel, voluntariness overcomes the fact that he was moved to a new location. The district court ignored this and instead focused on subjective awareness of guilt, which is not part of the custody analysis for Miranda under the Supreme Court's decision in Stansbury. Stansbury held, in fact, that subjective knowledge should not be taken into account under the reasonable person standard when looking at custody. And when we look at the duration and Leal's own statements, two other factors that the court pointed to in Howe's case. I'm puzzled by the assertion that the suspect's knowledge of his guilt can't be taken into account. I mean, there are three possibilities. The suspect knows he's guilty, the suspect knows he's innocent, and the suspect doesn't know whether he's guilty or innocent. If you can't take the first of those three into account, presumably you can't take the next two into account either. And then you have a person who hasn't, basically hasn't a clue about the world around him. That doesn't sound like a reasonable person either. Judge, it's an objective standard. And the reason it's objective is because that's the custody question. So in Stansbury, the court said, look, you don't look at what the officers do that they didn't speak to. You don't look at what the individual knows subjectively. It doesn't say explicitly. That's the holding in Stansbury. And I think that that applies here, right? So if Leal had said, I don't think I'm free to go, I don't believe you, as in the Slate case cited by opposing counsel, that would be a different case because objectively he's made them aware. Counsel, I'm having a lot of difficulty getting you to address my questions. I wish you would address my second question, which, to repeat, if you cannot, if it is impossible to consider the suspect's knowledge that he was guilty, it's presumably impossible to consider his knowledge that he was innocent or his uncertainty. If all of those three things are off limits, how can you have a hypothetical reasonable person at all? It sounds like you've got a hypothetical ignoramus rather than a reasonable person. That's my problem. Judge, I have two answers for you. The first is that you can take an individual's statements into an account. That's one of the house factors. Certainly, if a statement indicates, expresses that subjective knowledge of guilt, that's a different case. But that's not this case. And second, I think to your question about a reasonable person, Bosnick and the other cases cited in the briefs indicate that the reasonable person is one who is presumed innocent of the crime or perhaps is, in fact, innocent. Why? You say it's impermissible to take account of the fact that the suspect knows he is guilty. It then must be equally impermissible to take account of a hypothetical belief that the suspect is innocent. If you can't look at a suspect's views about his own guilt or innocence, that has to cut both ways. I don't see how it can be loaded in one direction. Is there some way, logically, it can be? Sure, Your Honor. I think the question is whether a person who is innocent would view these circumstances as one in which they would be free to leave. Again, going back to Stansbury, the analysis is not about guilt or innocence primarily or about the strength of the case. It's about whether the totality of the circumstances are indicative of custody. And when you're looking at the totality of circumstances, whether they're indicative of custody... Fine, fine. Then your answer to my question has to be, it is totally irrelevant, all the time, for every purpose, whether the suspect believes he's guilty, innocent, or doesn't have a clue what he's being questioned about, so he can't know whether he's guilty or innocent. The test... Yes, Your Honor. You want to abstract from that. Right. Yes, Your Honor. I think that's correct, unless there are statements indicating one way or the other. No, no, no. You can't logically have any unless clause in that construction. It's either relevant or it isn't. Judge, I think that subjective knowledge is not relevant, whether of innocence or of guilt. Okay. Now we're back without the unless clause. Right. But the fact that it's stated knowledge is relevant because it's part of the totality of the circumstances. And here, briefly, I'll address those restraint and statement factors from House. I believe that District Court took a factor that objectively favors the government, the short duration of a quick confession, and flipped it on its head, suggesting that the quick confession was indicative of subjective knowledge of guilt, when in fact, real statements are objectively voluntary. With that, I'd like to reserve the rest of my time for rebuttal. Certainly, counsel. Mr. Williams. Good morning, Your Honors. Stephen Williams for Defendant Appellee Jorge Leal. May it please the Court. Your Honors, it seems that when you look at an individual, in Mr. Leal's case, whether or not they were aware of their own guilt and focused on the time when the statement was made, it almost defies any type of rational belief that someone would think they could just get up and leave under those circumstances. Well, I have to read that question from the focus of the car keys. Obviously, he's not going to leave without his keys. The question is, would a reasonable person in those circumstances think that he could ask for his keys back, get them, and then leave? Judge, I don't think a reasonable person would believe that upon asking for the keys, they would be returned and that he could leave. In addition to that, you have the factor that he's got his cell phone and his wallet that are on the table in front of him. They've been seized. The cell phone? Very easy to pick up. The keys are in the custody of the agents. Right? Correct. So is there anything really in this case other than the need to make an assessment about whether if Leal had asked for the keys, they would have been returned? I believe so, Judge. I don't think a reasonable person would have believed that they could reach across the table, as far as it was, we don't know exactly where, and take his cell phone and his wallet and stand up and leave at that point in time. And the reason has to do not just with the fact that they were seized and he walks in the room and they're sitting on the table and nobody offered to return them to him, which did not happen. But in addition to that, when you listen to the tape of the confession, which is at the record 70, it's Exhibit 3, when you listen to the tape, it's clear that the government agents were holding the wallet. They asked him about his ID during the time, in the very beginning of his interview. They're picking it up. They're asking him about it. So they still have possession. Certainly the wallet is there on the table at one point. They had to pick it up and take the ID out of it. The same thing with the phone. They're manipulating the phone. They're asking him questions about what the passwords are. So no reasonable person under those circumstances would believe, oh, I can just reach across the table, pick these items up, walk out. And this is setting aside even your question, Your Honor, about the keys, which he has no idea where those are. And as we know, they're not even in the home. So he doesn't have access, truthfully, to all three of those items. Mr. Williams, do you believe that Mr. Leal agreed to accompany the agents to an interview, a discussion, an interrogation, a meeting, whatever you want to call it, at a location separate and apart from that at which the car stop occurred? Absolutely, Judge. He did. There's no evidence in the record of anything. One of the things I've been focused on, and maybe it's a misfocus, you can tell me, is that at no point along the way, including after he sat down, and it didn't take long after he sat down before he acknowledged the misconduct. You've listened to the tape many times. He doesn't express any form of unease, discomfort, second-guessing, like, hey, what's going on here? I've got to tell you guys I'm a little nervous. I'm not sure I really want to do this. Any iteration of anything like that. Is that legally relevant or irrelevant in your judgment? Your Honor, taking those things one step at a time, when we talk about the voluntariness of the fact that he got in the car voluntarily, I suppose, and certainly when you look at the Patterson case, it is a factor that the court— —represented themselves as law enforcement. Absolutely. Okay. But the timeframe in which the evaluation of whether or not he's in custody takes place is when the statement is made. Right. I believe that he is exhibiting, during his statement, considerable unease about what his situation is, and that it can be interpreted in many ways. The relevance of his subjective beliefs have been stated by many courts, to include the Supreme Court, to be irrelevant. I distinguish that between his conscious knowledge of facts, which are not subjective beliefs, and I regret that I didn't make this distinction clearer in my response brief, because it is something that I've done a lot of thinking about when talking about his subjective beliefs versus his conscious knowledge of the facts. So his conscious knowledge of the facts concerning these circumstances surrounding what our assertion is, is what's his detention. In this secret house, his conscious knowledge of those facts are objective facts and have to be evaluated then from the reasonable person standard. I don't think I can assert to the court that his nervousness, his own subjective nervousness, is a factor that the court can consider. And I apologize for taking so long to answer your question directly, but that's the direct response. That said, and this goes beyond your question, Your Honor. I've got to tell you, I'm not so sure of that, honestly. And the reason I say that is because I think it goes to the point that Mr. Reid is making, that a court can consider anything an individual is expressing. And if through nervousness, anxiety, it's pretty clear that this guy feels like he's trapped in a discussion with law enforcement, I'm not so sure that that can't inform the analysis. Well, I would invite the court to consider that as well then, Your Honor. I certainly believe that the court can consider any objective facts that inform a defendant's belief in their own guilt. And there are plenty in this case. I'm not talking about guilt so much. It's just a question about does he feel like he can get up and leave? Is he in custody? Well, in this particular case, Judge, there are certainly things that demonstrate his nervousness because he is expressing that. And when looking at the factors surrounding his interview and how it proceeded, he was demonstrating nervousness concerning what the topics were throughout. I mean, that is clear. Yeah. Was it voluntary? The difficulty in the hand he's dealt you is that at about the two-minute mark of that tape, he's making incriminating statements. And the only thing that really preceded that was the collection of some demographic information. And then the agent says, you know, why are you here? Why did you come to this location? And then he's falling on it at that point. Your Honor, I don't believe that the fact that incriminating statements were made, and even that they were made quickly, has any bearing on the determination of whether or not he's in custody. Well, can it change? I mean, it's not static, right? He may not have been in custody at the beginning, but there may have been something developed or changed that resulted in him being in custody. Sure. Suppose at the midway point of the tape, he says, hey, I'm uneasy, guys. I'm going to hit the road here. And they say, you ain't going anywhere. Well, their expression at that point would clearly indicate that he was in custody. The only point of that is it's not static. Absolutely, Judge. But my assertion is simply that even if at the very beginning he is making inculpatory statements, that shouldn't have the effect of rendering the entire questioning to be non-custodial. It might vary. In fact, the custodial nature of it would have a tendency to accelerate the timeframe under which someone is going to make inculpatory statements. If they feel like their goose is cooked, the effort most likely is one to engage in cooperation in the hopes that they're going to be released. That's what it appears was happening in this case. Thank you, Your Honor. Thank you, Mr. Williams. Anything further, Mr. Reed? Yes, Judge. Leal's words and actions indicate all the way up until when the interview begins that he believes he is free to go at any time. He consents and agrees to speak with agents. He consents to go. He, again, consents to the interview when he gets there. He immediately, within a few short minutes, confesses to the crime. This is in no way distinguishable from the facts in Patterson, where under similar circumstances, the officers asked an individual to come to the station. The individual consented to go with them in the agent's vehicle and left the car and presumably his keys behind. At least up until the beginning of the interview, this case is indistinguishable from Patterson and this court should reach the same result. The one thing the government is not pointing to in Patterson, I understand why you're relying upon it and I get it, but in Patterson, you know, there is one difference. When that guy hops in the car, the agent, Stuart, says, hey, I just want to make absolutely sure, I'm quoting, that you're voluntarily coming with us, correct? We didn't have an iteration of that happen here. Judge, I think we have something similar here. We have him consenting multiple times. First, to get into the vehicle and go to the house to speak with agents and a second time, when he arrives at the residence, sits down with a different agent and that agent asks, are you consenting to speak with us? Is this voluntary? Is this what you are choosing to do? And he says yes on both occasions. For both of these reasons, I'd urge the court to reverse. Thank you, Mr. Reed. The case is taken under advisement.